RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────────

TIMOTHY A. RAIMEY, Administrator of the Estate of Matthew Burroughs,

        *Plaintiff-Appellee*,

*v.*

CITY OF NILES, OHIO, et al.,

        *Defendants*,

CHRISTOPHER MANNELLA, Niles City Police Department Officer, in his individual capacity,

        *Defendant-Appellant*.

No. 22-3285

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:20-cv-00005—Sara E. Lioi, District Judge.

Argued: March 17, 2023

Decided and Filed: August 10, 2023

Before: MOORE, CLAY, and STRANCH, Circuit Judges.

─────────────────────

## COUNSEL

**ARGUED:** Mel L. Lute, Jr., BAKER DUBLIKAR, North Canton, Ohio, for Appellant. Kevin C. Hulick, SPANGENBERG, SHIBLEY & LIBER, LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Mel L. Lute, Jr., Gregory A. Beck, Andrea K. Ziarko, BAKER DUBLIKAR, North Canton, Ohio, for Appellant. Kevin C. Hulick, Nicholas A. DiCello, SPANGENBERG, SHIBLEY & LIBER, LLP, Cleveland, Ohio, Jonathan S. Abady, Earl S. Ward, Vivake Prasad, EMERY CELLI BRINCKERHOFF ABADY WARD & MAZEL LLP, New York, New York, for Appellee.

---

**OPINION**

---

JANE B. STRANCH, Circuit Judge.   In January 2019, Officer Christopher Mannella fatally shot James Burroughs at an apartment complex in Niles, Ohio.  On behalf of Burroughs's estate, Timothy Raimey brought this action under 42 U.S.C. § 1983 and state law against the City of Niles and several involved police officers.  The Defendants moved for summary judgment, which Raimey did not oppose except as to his claims against Mannella.  The district court granted summary judgment to the other Defendants but denied Mannella's assertions of qualified and state law immunity, allowing Raimey's claims of excessive force, wrongful death, assault and battery, and reckless conduct, to proceed against Mannella.  Mannella timely appealed.  We deny Raimey's motion to dismiss the appeal and affirm the denial of qualified immunity to Mannella.

## I. BACKGROUND

The parties in this case dispute the facts surrounding the shooting.  To determine the relevant set of facts in an interlocutory appeal of a denial of qualified immunity, "we follow the same path as did the district court" by "drawing all reasonable inferences in the plaintiff's favor—and, ideally . . . . look[ing] no further than the district court's opinion for the pertinent facts and inference." *Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 611 (6th Cir. 2015).  Accordingly, we draw the following facts from the district court opinion.

On January 2, 2019, Matthew Burroughs went to the Niles Municipal Court to pay a traffic fine.  As the court processed Burroughs's payment, the electronic docketing system alerted court officials that there was an active warrant for Burroughs's arrest that related to a recent domestic violence incident.  Officer James Reppy was one of the officers who responded to that incident.

Court personnel asked Todd Zickefoose, a probation officer, to ensure that Burroughs did not leave while a bailiff summoned the police, but Burroughs left through the front doors.

Zickefoose followed Burroughs outside, commanded him to stop and come back into the court because there was a warrant for his arrest, and told him to put his hands behind his back. When Zickefoose tried to grab Burroughs's forearm, he pulled away and ran toward the building's parking lot; Zickefoose chased Burroughs and caught up with him as Burroughs was opening the door to his car. Zickefoose grabbed Burroughs's arm as he was getting into the car and attempted to pull him out, but Burroughs started the car, put it in reverse, and as he pulled away, the open car door hit Zickefoose in his midsection. Zickefoose reported the incident and the vehicle's license plate number to the police.

Dispatch notified police Lieutenant Daniel Adkins and Officers Mannella, Reppy, and Hogan about the altercation, and each officer responded separately to Burroughs's apartment on Royal Mall Drive. Hogan arrived first and saw Burroughs turn onto Royal Mall Drive traveling approximately 30 to 35 miles per hour—"not over" the speed limit. Burroughs was followed closely by Mannella, who was then on foot, and then was followed by the police cruisers driven by Reppy and Adkins. Burroughs's car approached and stopped about three feet from Hogan's cruiser, in what Hogan described as a "controlled stop" that did not require Burroughs to slam on the brakes. Burroughs then put the car in reverse and backed away from Hogan's cruiser at a speed that Hogan testified was "not overexcessive." But as Burroughs reversed his car, Reppy pulled into the apartment complex behind him, blocking him between Reppy's SUV and Hogan's cruiser. Burroughs stopped again to avoid hitting Reppy's vehicle. Burroughs then shifted the car back into drive.

Officers Hogan and Mannella failed to activate their body cameras before or during the incident, in violation of the Niles Police Department's body camera policy. Reppy's body camera was on and partially captured the fatal encounter that ensued, recording the sound of all eight shots fired and images of the position of Mannella and Burroughs's car for seven out of eight shots. Mannella approached the car on foot, with his gun drawn, and yelled for Burroughs to "[s]hut the car off" and "[g]et out of the vehicle." Mannella then fired three rounds into the windshield, which penetrated the windshield and hit Burroughs in the chest, killing him. Reppy fired an additional five shots that penetrated the car but did not hit Burroughs. Mannella turned his body camera on after the shooting and immediately stated that he feared that he would be run

over.  Mannella's body camera footage also captures Mannella admonishing Hogan to be careful of what he said on camera.[1]  After the shooting, Officers broke the car window to gain entry. When they tried to remove Burroughs's body from the driver's seat without putting the car in park, the car lurched forward and hit a dumpster before coming to a complete stop.

Mannella disputes a number of these facts.  Based on the record evidence and drawing inferences in Raimey's favor, however, the district court determined that a reasonable jury could credit Raimey's version of events and find that, when Mannella opened fire, Burroughs was moving slowly or was stationary; Burroughs was complying with Mannella's commands by bringing the vehicle to a stop; and Mannella was standing to the side of the car, not in the vehicle's path.  In making these findings, the district relied on witness testimony, including Hogan's statement that Burroughs's vehicle was "slowing down . . . to a great degree" when Mannella fired, along with Reppy's body camera footage showing that when Mannella fired, Burroughs was travelling very slowly—if at all—and decreasing his speed, as evidenced by his car's lit brake lights.  The district court also relied on an unrebutted forensic analysis by Raimey's expert, Jason Fries, Ph.D., which determined that Burroughs's car was pointed away from Mannella and that Mannella was to the side of the vehicle when he fired.[2]  An investigation by the Bureau of Criminal Investigation for the Ohio Attorney General's office ensued.

On behalf of Burroughs's estate, Raimey sued the City of Niles, the City's Police Chief, and Officers Mannella, Reppy, and Hogan, bringing claims for violation of Burroughs's Fourth Amendment rights under 42 U.S.C. § 1983, and for wrongful death, reckless conduct, and assault and battery under Ohio law.  The Defendants moved for summary judgment, asserting qualified immunity on the §1983 claims and immunity from liability under Ohio law.  Raimey opposed summary judgment only as to Mannella, and the district court granted summary dismissal to the other Defendants.  The district court held that genuine issues of material fact precluded a grant of

---

[1]The Court may look to video footage where "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[2]The Defendants chose not to depose Raimey's expert, then raised a late *Daubert* challenge to the expert's methodology in their reply brief, which the district court rejected on the merits.  Mannella does not renew the *Daubert* challenge on appeal.

summary judgment to Mannella because "[c]onsidering the totality of the circumstances in a light most favorable to [Raimey], . . . a jury could find that Burroughs did not present an imminent or ongoing danger to the officers or others at the scene." Mannella timely appealed, and Raimey moved to dismiss the appeal, arguing that Mannella raised factual disputes that deprived this court of appellate jurisdiction.

## II. ANALYSIS

### A. Standard of Review

"We review de novo a district court's denial of a defendant's motion for summary judgment on qualified immunity grounds." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013); *Hubbell v. City of Xenia*, 873 N.E.2d 878, 882 (Ohio 2007) (same as to governmental immunity under Ohio law). "Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). At summary judgment, a government official is entitled to qualified immunity unless the evidence, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that "(1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* at 680-81(quoting *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)). Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Hicks v. Scott*, 958 F.3d 421, 430 (6th Cir. 2020).

### B. Jurisdiction

This court has jurisdiction over appeals from "final decisions of the district courts[.]" 28 U.S.C. § 1291. Interlocutory appeals of the denial of qualified immunity at the summary judgment stage are considered "final decision[s]" within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Our jurisdiction, however, is limited to legal questions because "circuit courts can review a denial of qualified immunity only 'to the extent that it turns on an issue of law.'" *Brown v. Chapman*, 814 F.3d 436, 444 (6th Cir. 2016) (quoting

*Mitchell*, 472 U.S. at 530).   When the record contains "a videotape capturing the events in question," we may not adopt a "version of the facts for purposes of ruling on a motion for summary judgment" that "blatantly contradict[s]" the asserted version of events such that "no reasonable jury could believe it."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).   And "we must nonetheless 'view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff.'"   *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)).

At summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party—which, in qualified immunity cases, "usually means adopting . . . the plaintiff's version of the facts."   *Id.* at 378; *see Adams v. Blount Cnty.*, 946 F.3d 940, 948 (6th Cir. 2020).   As we have acknowledged, "in accepting the district court's factual determinations and relying on the plaintiff's record evidence for the purpose of deciding the interlocutory appeal, we do not ourselves make any findings of fact or inference for purposes of any subsequent proceedings."   *DiLuzio*, 796 F.3d at 611.   Instead, whether the plaintiff "is ultimately able to prove the alleged factual bases for his claims is a matter left for the finder of fact [on remand]—not the appellate court on interlocutory appeal." *Bunkley*, 902 F.3d at 561 (alterations in original) (quoting *Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010)).

Although Mannella purports to accept the facts construed by the district court in the light most favorable to Raimey, he contests multiple critical factual determinations—arguing, for instance, that he perceived the car to be accelerating and driving at a speed of twenty to twenty-five miles per hour and in danger of "striking and killing an officer or officers" when he used deadly force; that he was positioned in the front-center path of Burroughs's vehicle; and that Burroughs was not complying with orders to stop.   These assertions directly contradict the district court's determinations of the facts.

As Mannella appears to concede, his appeal includes factual disputes that this court has no jurisdiction to decide on interlocutory appeal.   Nonetheless, we may decide a challenge "with any legal aspect to it," even if the appellant makes improper fact-based arguments.   *See Bunkley*, 902 F.3d at 560 (providing that a court may "excise the prohibited fact-based challenge so as to

establish jurisdiction."). Specifically, we may decide the legal question of whether qualified immunity is warranted based on the facts as found by the district court, taken in the light most favorable to Raimey. *See id.*

## C. Qualified Immunity

Qualified immunity protects governmental officials from suit as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-step inquiry applies, asking whether the facts, "when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right," *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015), and whether the right was "clearly established" such "that a reasonable official would understand that what he is doing violates that right," *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A court should exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1. Constitutional Violation

With respect to the first qualified immunity prong, the question is whether "the plaintiff['s] version of the events, relied upon by the district court, supports a holding that defendants violated [the plaintiff's] Fourth Amendment right to be free from excessive force." *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008). The Fourth Amendment prohibits police from using excessive force while making an arrest, investigatory stop, or other type of seizure. *See Graham v. Connor*, 490 U.S. 386, 394-395 (1989). A use of force must be "objectively reasonable" to be constitutional. *Id.* at 397. Objective reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 396). It allows for the fact that "police officers are often forced to make split-second judgments" about the amount of force necessary "in circumstances that are tense, uncertain, and rapidly evolving." *Mullins*, 805 F.3d at 766–67 (quoting *Graham*, 490 U.S. at 396-97).

Under the Fourth Amendment, an officer's use of deadly force is objectively reasonable only when there is probable cause to believe that the suspect poses an immediate threat to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Graham*, 490 U.S. at 396. To determine whether such probable cause exists, we consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Our precedent establishes that the question of whether a suspect posed an immediate danger is dispositive: where the suspect poses no immediate threat to the safety of an officer or others, the use of deadly force is unreasonable and violates the Fourth Amendment. *Foster v. Patrick*, 806 F.3d 883, 887 (6th Cir. 2015).

Our court has a line of precedent addressing the use of deadly force against suspects fleeing in cars. When an officer uses deadly force in that situation, we ask whether the officer had "reason to believe that the car present[ed] an imminent danger" to the lives of "officers and members of the public in the area." *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005). Deadly force is justified against "'a driver who objectively appears ready to drive into an officer or bystander with his car,' but generally not 'once the car moves away, leaving the officer and bystanders in a position of safety,' unless 'the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car.'" *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017) (quoting *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014)).

For instance, in *Kirby*, officers "essentially sandwiched" the defendant's vehicle between their police cars and a ditch so that he could not easily flee. 530 F.3d at 477-78. The police claimed: that the defendant's car began to back up toward an officer on the shoulder of the road next to a ditch, endangering his life and prompting him to fire his weapon at the driver; and that the car then lurched forward toward a second officer, who shot at Kirby because he feared he would be crushed between two vehicles. *Id.* at 478. Eyewitness testimony and accident reconstruction evidence, however, established that: Kirby's car had moved slowly; that it could not have hit any of the officers; who were shielded by their own vehicles or standing to the side; and that it was not moving when the officers fired. *Id.* at 482. We affirmed the district court's

denial of qualified immunity because a jury could conclude that a reasonable police officer would not have believed Kirby posed a threat of serious physical harm to the officer or others. *Id.* at 482.

Similarly, in *Cupp*, the defendant officer claimed that he shot a suspect who gained control of a police cruiser and accelerated toward the nearby officer and a bystander—but the plaintiff produced evidence that the officer had in fact fired the fatal shot after the suspect's car had already passed him, under circumstances "of no threat to [the officer] or others." 430 F.3d at 770. Even though the officer made a "split-second judgment" based on rapidly developing events, the court held that a reasonable jury could conclude the car was merely pointed in the officer and bystander's general direction and a reasonable officer would not have perceived danger to anyone at the scene. *Id.* at 774-75 (quoting *Graham*, 490 U.S. at 397). Likewise, we held in *Sigley v. City of Parma Heights* that it was constitutionally unreasonable for police to shoot the driver of a fleeing vehicle—even though the driver might have hit an officer while backing up—because the driver later avoided collisions with police cars, and because it was not clear that he had intended to injure any officers or bystanders. 437 F.3d 527, 536-37 (6th Cir. 2006).

As in *Kirby* and *Cupp*, the facts taken in the light most favorable to Raimey show that no person at the scene was in danger when Mannella used deadly force. At the time Mannella fired, Burroughs was driving very slowly and braking to comply with Mannella's orders to stop, while Mannella himself was either not in the path of the vehicle or could easily have stepped away from the slowly braking car. The officers also never saw Burroughs drive in a reckless or dangerous manner leading up to the shooting—instead, their testimony establishes that he drove under the speed limit, did not risk hitting or attempt to hit any cars, officers, or pedestrians, avoided hitting police vehicles by making a controlled stop, and was not facing Mannella head on but rather was to the side of Mannella when Mannella fired. Based on the facts found by the district court, a reasonable officer in Mannella's position would not have had reason to believe that Burroughs posed an imminent danger. *Cupp*, 430 F.3d at 774.

Mannella's arguments to the contrary are unavailing. First, he argues that Burroughs's prior confrontation with Zickefoose showed he was willing to injure an officer that got in the

way of his escape. But the use of deadly force at issue here occurred at a different location, and after that possible danger had subsided, when Burroughs was trying to comply with Mannella's commands. *See Kirby*, 530 F.3d at 479. Between Burroughs's confrontation with Zickefoose and the situation at the time of Mannella's use of force, the facts viewed in Plaintiff's favor as found by the district court show that Burroughs drove under the speed limit, avoided hitting any cars or pedestrians, initially brought his vehicle to a controlled stop to avoid hitting a police vehicle, and was in the process of complying with Mannella's orders to stop his car. Therefore, although the situation "developed rapidly," this "is not a case where a dangerous situation evolved quickly to a safe one before the police officer had a chance to realize the change." *Cupp*, 430 F.3d at 774-75.

Mannella's other arguments also rely on factual disputes over which we have no jurisdiction. For instance, Mannella attempts to distinguish this case from *Cupp*, arguing that the suspect's flight in that case did not immediately threaten the officer or any other bystander. But the facts found by the district court yield the same conclusion: that Mannella, positioned to the side of the car, was not immediately threatened by Burroughs, who was braking and traveling at a very slow speed. This case is also unlike *Burghardt v. Ryan*, in which the court found an officer's use of deadly force did not violate a clearly established right where the suspect's car crashed into a parked cruiser immediately before the officers opened fire. No. 21-3906, 2022 WL 1773420, at *1 (6th Cir. June 1, 2022). Here, Burroughs affirmatively avoided crashing into any other cars and was in the process of complying with Mannella's commands.

In the factual setting in which deadly force was used, a reasonable officer in Mannella's position would not have had reason to believe that Burroughs posed a threat of imminent harm. We therefore affirm the district court's decision that Mannella's use of deadly force was unreasonable and violated Burroughs's Fourth Amendment rights.

### 2. Clearly Established Law

"It is clearly established constitutional law that an officer cannot shoot a non-dangerous fleeing felon[.]" *Cupp*, 430 F.3d at 775-76 (citing *Garner*, 471 U.S. at 11). The Supreme Court has long held that, "[w]here the suspect poses no immediate threat to the officer and no threat to

others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11.  Like the plaintiff in *Cupp*, Burroughs posed no threat of imminent harm to officers or others, making this an "obvious case where *Tennessee v. Garner* clearly establishes the law." *Cupp*, 430 F.3d at 776.  *Kirby* and *Sigley* reinforce this conclusion and make clear that it is constitutionally unreasonable to use deadly force where an officer is positioned to the side of a car or is not in danger of being hit, and *Cupp* gave Mannella fair warning that a reasonable officer would not perceive imminent harm based merely on the fact that the decedent looked at the officer with his hands on the wheel of a vehicle.  *Kirby*, 530 F.3d at 482; *Sigley*, 437 F.3d at 536-37; *Cupp*, 430 F.3d at 769.

Moreover, "[g]eneral statements of the law are capable of giving clear and fair warning to officers even where 'the very action in question has [not] previously been held unlawful.'" *Cupp*, 430 F.3d at 776-7 (quoting *Anderson*, 483 U.S. at 640) (second alteration in *Cupp*).  *Garner* long ago established that a non-dangerous fleeing suspect has the right not to be seized with deadly force.  Mannella had clear warning of the unconstitutionality of using deadly force to apprehend Burroughs.  We affirm the district court's denial of qualified immunity.

### D.  Ohio Statutory Immunity

In addition to the § 1983 claims, Raimey also brings state law tort claims for wrongful death, assault and battery, and reckless conduct.   Mannella appeals the district court's determination that he was not entitled to immunity under the Ohio statute that grants immunity to municipal employees acting within the scope of their employment.  Ohio law grants immunity from civil suit to employees of political subdivisions unless their acts or omissions are "manifestly outside the scope of the employee's employment or official responsibilities" or taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(a)-(b).   Relevant here, "reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012).

When federal qualified immunity and state-law immunity "rest on the same questions of material fact, we may review the state-law immunity defense 'through the lens of federal qualified immunity analysis.'" *Wright v. City of Euclid*, 962 F.3d 852, 878 (6th Cir. 2020) (quoting *Hopper v. Plummer*, 887 F.3d 744, 759 (6th Cir. 2018)) (police officers' Ohio law statutory immunity defense "stands or falls with their federal qualified immunity defense."). We have previously held that "if the trier of fact were to find that" a decedent "posed no immediate threat of harm to anyone else. . . then the officer's actions in shooting the decedent were reckless at best" for purposes of Ohio statutory immunity. *Stewart v. City of Euclid*, 970 F.3d 667, 677 (6th Cir. 2020) (quoting *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011)). We hold that the same evidence that would allow a jury to conclude that Mannella's actions were unconstitutional supports a finding that Mannella's actions were at least taken in a reckless manner. We therefore affirm the district court's decision.

## III. CONCLUSION

For the reasons set forth above, we **DENY** Raimey's motion to dismiss the appeal, **AFFIRM** the judgment of the district court, and **REMAND** the case for further proceedings consistent with this opinion.