RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JORDEN BROWN,

     *Plaintiff-Appellant*,

  *v.*

SAMUEL GILES, in his individual capacity; ERIC SPURLOCK, in his individual and official capacities; VILLAGE OF COAL GROVE, OHIO; BILL MURPHY, in his official capacity as Village of Coal Grove Chief of Police,

     *Defendants-Appellees*.

No. 23-3142

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:21-cv-00540—Douglas Russell Cole, District Judge.

Decided and Filed:  March 5, 2024

Before:  GIBBONS, WHITE, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Gregory A. Napolitano, Paul M. Laufman, LAUFMAN & NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant.  Cassaundra L. Sark, Randall L. Lambert, LAMBERT LAW OFFICE, Ironton, Ohio, for Appellees.

  THAPAR, J., announced the judgment of the court and delivered the lead opinion in which GIBBONS, J., joined in the result.  GIBBONS, J. (pg. 7), delivered a separate concurring opinion.  WHITE, J. (pp. 8–12), delivered a separate dissenting opinion.

_____

**OPINION**

_____

THAPAR, Circuit Judge.   When Jorden Brown fled from police, Officer Samuel Giles tased him.  The district court dismissed Brown's excessive force claims against Officer Giles, the police chief, and the municipality.  We affirm.

I.

Jorden Brown, struggling with addiction and homelessness, showed up outside his mother's workplace.  He hoped she would give him money and a place to stay.  Instead, she asked police for assistance, knowing Brown had a warrant out for his arrest.

Officer Samuel Giles responded to the call.  Brown gave Officer Giles a fake name and denied knowledge of the warrant.  While the two spoke, Officer Giles repeatedly told Brown to stay put.  Brown promised, "I ain't going to run on you."  R. 1-1, at 19:02:40.  But the moment Officer Giles stepped away to take a phone call, Brown bolted.

Officer Giles pursued and, mid-stride, fired his taser.  One probe hit Brown's head, and the other hit his back.  Brown fell and hit his head on the ground.  While handcuffing him, Officer Giles held the taser against Brown in case he continued to resist.

Brown suffered injuries from the fall.  So he sued Officer Giles, the police chief, and the municipality under 42 U.S.C. § 1983.  He alleges Officer Giles violated his Fourth Amendment rights by using excessive force and that department policies or customs enabled the violation.  Brown attached bodycam footage of the event to his complaint.

The defendants moved to dismiss.  In a thorough opinion, the district court determined that Brown failed to allege a violation of clearly established law.  Brown now appeals.

II.

We start with Brown's two excessive force claims against Officer Giles.

1.

First, Brown alleges that Officer Giles used excessive force by tasing him as he fled. Officer Giles argues he's entitled to qualified immunity. To overcome that immunity, Brown must show it's clearly established that tasing him in this particular context was excessive. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). And that means he must produce an on-point, binding case. *Bell v. City of Southfield,* 37 F.4th 362, 367 (6th Cir. 2022). He can't.

At the outset, Brown runs into trouble because we've held that it's reasonable for officers to tase fleeing suspects. *See Perez v. Simpson*, 83 F.4th 1029, 1031 (6th Cir. 2023); *see also Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509–10 (6th Cir. 2012). So the fact that Officer Giles tased him isn't enough to establish excessive force.

Moreover, several of the opinions Brown identifies aren't binding. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 499 (6th Cir. 2012) (Cole, J., concurring); *Peabody v. Perry Twp.*, No. 10-CV-1078 (EAS), 2013 WL 1327026, at *8 (S.D. Ohio Mar. 29, 2013). Nonbinding opinions are never enough to clearly establish a point of law. *Bell*, 37 F.4th at 367.[1] So these cases don't help Brown's argument.

---

[1]While the Supreme Court has indicated that some acts are obviously unconstitutional even without precedent—such as torturing someone for a minor traffic violation—not even the dissent argues that's true here. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021). Instead, the dissent points out that a "robust consensus" of persuasive authority may clearly establish law. Dissenting Opinion at 8. Although the Supreme Court has suggested that category might exist in theory, the Court has never found it to exist in fact. *See, e.g.*, *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015) ("[N]o such consensus exists here."); *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014); *Taylor v. Barkes*, 575 U.S. 822, 826 (2015). In fact, the Court hasn't even held that *binding* circuit precedent could clearly establish a right. *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 665-66 (2012) ("Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law . . . ."); *Barkes*, 575 U.S. at 826; *Sheehan*, 575 U.S. at 614. Police officers protect the public in uncertain, dangerous, and rapidly evolving situations—not in the cold crucible of the courtroom. Asking Officer Giles to divine "clearly established" law from the smattering of cases the dissent cites would demand more than the Supreme Court requires.

Brown cites one published, in-circuit case, but that opinion concerns lethal force. *See Sample v. Bailey*, 409 F.3d 689, 693, 696–97 (6th Cir. 2005) (gun). Tasers typically aren't lethal. *See Gambrel v. Knox Cnty.*, 25 F.4th 391, 401 (6th Cir. 2022). And in the context of clearly establishing a constitutional right, this difference matters. That's for good reason: there are circumstances in which nonlethal force would be reasonable but lethal force excessive. So Brown can't "clearly establish" that using tasers is excessive by noting that it would have been unreasonable for Officer Giles to shoot at him with a gun. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam).

Trying to sidestep this problem, Brown argues that Officer Giles's taser use was particularly dangerous. Brown emphasizes that Officer Giles didn't just tase him in the back. One probe hit his head, and heads are uniquely sensitive to injury.[2] We doubt that this difference matters in the context of a mid-chase decision to tase a fleeing suspect. It's difficult to imagine how a sprinting officer could aim his taser precisely enough to (1) hit a suspect with both taser probes while (2) ensuring that neither probe hits the suspect's head. It's even harder to imagine that the Fourth Amendment requires such a feat. That's precisely why we defer to the "split-second" decisions of officers in fast-paced, complex situations. *Mullins v. Cyranek*, 805 F.3d 760, 765–66 (6th Cir. 2015) (quoting *Graham*, 490 U.S. at 397).

But even if the head-body distinction mattered, Brown still can't prevail because he doesn't have a binding opinion saying that the distinction matters. Brown points to only one unpublished, out-of-circuit opinion that discusses the danger of head tasings. *Wilson v. City of Lafayette*, 510 F. App'x 775, 778–80 (10th Cir. 2013). As already explained, that's not enough to meet his burden. *Marsh v. Arn*, 937 F.2d 1056, 1069 (6th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Officers in our circuit aren't expected to stay abreast of the varying and ever-changing law of other circuits—especially not unpublished opinions that have no precedential value.

---

[2]Brown also tries to bolster his case by alleging Officer Giles *intentionally* aimed at his head. But Officer Giles's subjective intent is irrelevant to excessive force analysis, where we ask what force a *reasonable* officer would use. *Graham v. Connor*, 490 U.S. 386, 399 (1989).

2.

What about Officer Giles's second alleged use of excessive force? Brown alleges that Officer Giles continued to tase him after he had been incapacitated. If true, this would be excessive force. *Brown v. Chapman*, 814 F.3d 447, 461 (6th Cir. 2016). And normally, Brown would need only to allege those facts to survive a motion to dismiss. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). But Brown didn't just describe the incident. He also provided the court with video footage of the incident and mentioned that footage throughout his complaint. In this context, we don't need to accept as true any allegation "blatantly contradicted" by the video. *Scott v. Harris*, 550 U.S. 372, 380 (2007). This dooms Brown's claim.

The video shows that Officer Giles tased Brown only once. As Brown notes, Officer Giles held the taser against him after he was incapacitated. But as the video makes clear, Officer Giles didn't use it. Active tasers—including the model Officer Giles used—make noises in both probe and drive-stun mode. R. 1, Pg. ID 7 (Axon X26 taser); *see, e.g.*, *Wade v. Fresno Police Dept.*, No. 09-CV-0599 (AWI), 2012 WL 253252, at *7 & n.15 (E.D. Cal. Jan. 25, 2012) (noting noise from an X26 taser before a "contact" tase). Indeed, we hear the taser sound in the video— but only once, and not when Officer Giles holds the taser against Brown. The lack of noise "utterly discredit[s]" Brown's claim. *Scott*, 550 U.S. at 380.

The dissent points out that the lack of sound from an audio recording may not be "reliabl[e]." Dissenting Opinion at 12 (quoting *Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir. 2011)). But we don't just rely on the lack of sound. The *presence* of the taser sound when Officer Giles initially tases Brown, contrasted with the conspicuous silence mere seconds later, belies his claims. And Brown never even tries to explain why the taser would fire silently a few seconds after firing audibly.

Qualified immunity gives police officers immunity from suit "at the earliest possible stage." *Bell*, 37 F.4th at 364. Officer Giles appropriately raised qualified immunity at the motion to dismiss stage. Thus, he is entitled to qualified immunity now.

III.

Brown also appeals his claims against the police chief and municipality. But both parties agree that in this context Brown's municipal liability claims survive only if he successfully raised an underlying constitutional claim. Appellant Br. at 26; Appellee Br. at 23; *see also Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017). Since Brown's claims against Officer Giles fail, he can't prevail on these claims either.

\*          \*          \*

We affirm.

—————————

**CONCURRENCE**

—————————

JULIA SMITH GIBBONS, Circuit Judge, concurring in the result. Officer Giles is entitled to qualified immunity under the circumstances presented; I therefore concur in our affirmance of the district court. I write separately to clarify my understanding of the measure of precedent required to demonstrate a "clearly established" constitutional or statutory right in an action brought under 42 U.S.C. § 1983.

To prevail in the face of an officer's qualified immunity defense, a § 1983 plaintiff need not show that "the very action in question has previously been held unlawful" in a reported, in-Circuit (or Supreme Court) case. *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017). Instead, he must demonstrate that the constitutional or statutory right of which he was deprived boasts "a sufficiently clear foundation in then-existing precedent" so as to constitute "settled law." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). He may demonstrate as much by identifying "controlling authority in [his] jurisdiction at the time of the incident which clearly established the rule on which [he] seek[s] to rely." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). But he may also do so by identifying a "robust consensus . . . of persuasive authority" that "every reasonable official would interpret" as establishing the claimed legal right. *Wesby*, 583 U.S. at 63.

What does this mean for Plaintiff Jorden Brown? Two things. For one, he need not identify a "binding case," Lead Op. 2, that speaks directly to the facts underlying his suit. *Abbasi*, 582 U.S. at 151. But for another, if he cannot identify such a case, the "robust consensus" of persuasive authority that he identifies in the alternative must nevertheless "place[] the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). Because Brown fails to make either showing, Officer Giles is entitled to qualified immunity, and the district court did not err in dismissing Brown's suit.

———————————

**DISSENT**

———————————

HELENE N. WHITE, Circuit Judge, dissenting. This court has said time and again that qualified immunity and Federal Rule of Civil Procedure 12(b)(6) are "often a bad fit." *Siefert v. Hamilton County*, 951 F.3d 753, 762 (6th Cir. 2020). For good reason: Qualified immunity demands a "fact-intensive" inquiry, *id.*, yet "the precise factual basis for the plaintiff's claim or claims" is hard to come by at the pleadings stage, *Pearson v. Callahan*, 555 U.S. 223, 238 (2009). Further compounding the problem, the "burden is not high at the 12(b)(6) stage." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). Allegations are deemed true, read "in the light most favorable to the plaintiff," and need only amount to a "plausible" claim "that an official's acts violated a clearly established constitutional right." *Id.* (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). Despite the headwinds of the procedural posture, my colleagues uphold the district court's dismissal of Brown's claims out the gate, concluding based on qualified immunity that neither of Officer Giles's alleged uses of a taser on Brown plausibly state a claim for excessive force. I disagree.

I.

The lead opinion says that the claim based on Giles's first alleged use of force—tasing Brown in the head while he was running—cannot succeed because there is no "binding opinion" that has deemed that specific conduct unconstitutional. Lead Op. 4. But "binding" precedent holding the specific conduct unconstitutional is not the standard for qualified immunity. What matters is whether the challenged action's unlawfulness is "apparent" given "pre-existing law." *Rhodes v. Michigan*, 10 F.4th 665, 679 (6th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). That clarity can come from either "controlling authority *or* a robust consensus of cases of persuasive authority," *Akima v. Peca*, 85 F.4th 416, 423 (6th Cir. 2023) (emphasis added) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)) (cleaned up), as Judge Gibbons's concurrence also notes, *see* Concurring Op. 7. "[I]n an obvious case," even general standards "without a body of relevant case law" suffice. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Simply put, "it is not necessary to find a 'case directly on point' in order to show that the

law governing a plaintiff's claim is clearly established. Some measure of abstraction and common sense is required with respect to police methods and weapons . . . ." *Terebesi v. Torreso*, 764 F.3d 217, 237 n.20 (2d Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Indeed, a contrary conclusion would give officers "a free pass to use" weapons "in any manner" they see fit "until a case from the Supreme Court or from this circuit involving that particular weapon is decided." *Phillips v. Comm. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012). Qualified immunity demands no such thing.

Regardless, the relevant law is clearly established here. A use of force is considered deadly when it poses "a substantial risk of causing death or serious bodily harm." *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988) (quoting Model Penal Code § 3.11(2) (Am. L. Inst., Proposed Official Draft 1962)). Even a normally nonlethal weapon "qualif[ies] as 'deadly force'" under certain circumstances, "especially if an officer hits a suspect in the head." *Gambrel v. Knox County*, 25 F.4th 391, 401 (6th Cir. 2022) (quoting *Robinette*, 854 F.2d at 912) (collecting cases). We have previously noted that tasing in risky situations may cause significant harm. *See, e.g.*, *Baker v. Union Twp.*, 587 F. App'x 229, 234 (6th Cir. 2014) ("It is widely known among law enforcement . . . that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall."). And numerous other courts have held that tasing can cause serious injury or death, particularly when a person's head is involved.[1] Moreover, it is well established that "deadly force is objectively reasonable only when there is probable cause to believe that the suspect poses an immediate threat to the officer or to others." *Raimey v. City of Niles*, 77 F.4th 441, 448 (6th Cir. 2023). That threat must be "of serious physical harm." *Palma v. Jacobs*, 27 F.4th 419, 432 (6th Cir. 2022). The analysis turns on the totality of the circumstances, but "[t]he threat factor is a minimum requirement for

---

[1]*See Buehler v. Dear*, 27 F.4th 969, 987 (5th Cir. 2022) ("[T]he use of 'a taser can cause death or serious injury.'" (quoting *Pena v. City of Rio Grande City*, 816 F. App'x 966, 972 n.8 (5th Cir. 2020))); *Wilson v. City of Lafayette*, 510 F. App'x 775, 778 (10th Cir. 2013) ("[T]he use of a taser, especially if one probe hits the head, amounts to a significant physical intrusion requiring a correspondingly significant justification."); *Bryan v. MacPherson*, 630 F.3d 805, 825 & n.7 (9th Cir. 2010) (noting that, "like any generally non-lethal force, the taser is capable of being employed in a manner to cause the victim's death" despite generally "fall[ing] into the category of non-lethal force"); *cf. Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005) (concluding that a Sage Launcher, although generally a "'less lethal' munition," was "deadly force" when used to "[s]hoot[] a suspect in the head").

the use of deadly force," and this court "ha[s] authorized the use of deadly force only in rare instances." *Id.* (cleaned up).

Here, Brown's claim based on the tasing of his head should survive the pleadings stage. Tasing involves a significant electrical charge capable of causing "excruciating pain." *Brown v. Chapman*, 814 F.3d 447, 459 (6th Cir. 2016). The head is among the most "sensitive and vitally important part[s] of [the human] body." *Baker v. City of Hamilton*, 471 F.3d 601, 609 (6th Cir. 2006). Unsurprisingly, putting the two together poses "a substantial risk of causing death or serious bodily harm," *Robinette*, 854 F.2d at 912 (quoting Model Penal Code § 3.11(2)). This case bears out that point: In the bodycam video, Brown is seen bleeding profusely from his head and suffering multiple seizures before emergency medical staff arrives. And he alleges that his injuries led to a multiday coma.

Finally, Brown did not pose an immediate threat of serious harm to anyone. His arrest warrant was from a local mayor's court for failure to pay a fine. He had no weapons and did not physically threaten Giles or members of the public. All Brown did was run.

The lead opinion responds that the Supreme Court has not invoked "a 'robust consensus' of persuasive authority" to conclude that the law was clearly established, and the lead opinion will not do so here because police officers have challenging jobs. Lead Op. 3 n.1 (citation omitted). First, "in applying the rule of qualified immunity," the Court itself has "referred to decisions of the Courts of Appeals"—not binding on the Court—"when enquiring whether a right was 'clearly established.'" *United States v. Lanier*, 520 U.S. 259, 269 (1997) (collecting cases). Second, even if the Court had not invoked a robust consensus of persuasive authority, the Court has nonetheless confirmed repeatedly that a consensus can be enough. *See, e.g.*, *Wesby*, 583 U.S. at 63; *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). And our court has used nonbinding decisions to conclude that the law was clearly established. *See, e.g.*, *Moldowan v. City of Warren*, 578 F.3d 351, 382 (6th Cir. 2009); *Young v. Kent Cnty. Sheriff's Dep't*, No. 21-1222, 2022 WL 94990, at *5 (6th Cir. Jan. 10, 2022). Third, binding precedent concerning deadly force and the lethality of applying normally nonlethal weapons to the head operated to define at a reasonably particularized level of generality the unlawfulness of Giles conduct. And fourth, "common sense," *Terebesi*, 764 F.3d at 237 n.20,

alone suggests an officer should know better than to tase a running person posing no threat to others in the head.

Further, the lead opinion appears to excuse Giles's conduct because it was "a mid-chase decision." Lead Op. 4. "It's difficult to imagine," it reasons, "how a sprinting officer could aim his taser precisely enough to (1) hit a suspect with both taser probes while (2) ensuring that neither probe hits the suspect's head." *Id.* But it does not explain on what basis it concludes that achieving "such a feat," *id.*, was impossible or difficult under the circumstances of this case, and assuming as much is inappropriate on a motion to dismiss. The video does not clearly depict the critical moment of the tasing and does not even show the relative positioning of Brown and Giles clearly. The video does, however, record Giles saying when speaking with other emergency staff afterwards that he tased Brown when he was close and did so because "it was too hot to run." MP4: Giles Body Cam 2 of 2, at 2:39–42, 5:02–04 (Coal Grove Police Dep't 2019). And Brown alleges that Giles intentionally aimed at his head. The lead opinion thus fails to view the allegations in the light most favorable to Brown, *see MacIntosh*, 69 F.4th at 315.

## II.

The lead opinion also concludes that Giles's second alleged use of the taser—after Brown hit the pavement and was incapacitated—never happened because the bodycam video "blatantly contradict[s]" Brown's allegations that it occurred, Lead Op. 5 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2017)). I disagree. This negative deduction hinges on the absence of a sound and cites a single unpublished district-court decision for the proposition that a taser necessarily makes a sound whenever used. But that decision said only that officers' declarations at summary judgment indicated that the taser used there made a noise when "activated" but before it was "applied." *Wade v. Fresno Police Dep't*, No. 09–CV–0599, 2012 WL 253252, at *7 n.15 (E.D. Cal. Jan. 25, 2012). That decision does not show that a taser necessarily makes a noise when applied directly to a person in drive-stun mode. Nor can we assume as much for the taser used here based on the sound it made during the first tasing. Such an assumption is especially unwarranted when tasers include multiple modes. Here, the first tasing occurred in probe mode (two probes shot as a projectile), while the second tasing is alleged to have occurred in drive-stun mode (direct contact between the taser and Brown's body).

More fundamentally, however, "[t]he lack of sound on an audio recording cannot be reliably used to discount" testimony at the summary judgment stage, *Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir. 2011), let alone allegations in a complaint. "Many factors could affect what sounds are recorded, including the volume of the sound, the nature of the activity at issue, the location of the microphone, whether the microphone was on or off, and whether the microphone was covered." *Id.* Thus, it is inappropriate to assume the absence of a second tasing from the absence of a sound despite "[t]he *presence* of the taser sound" during the first tasing, Lead Op. 5. Again, the two alleged tasings occurred in different modes, and the "[m]any factors" affecting "what sounds are recorded" could apply at some but not other points of an audio recording, *Coble*, 634 F.3d at 869. In short, it cannot be said based on the video that it is blatant—"completely obvious," *Blatant*, *Merriam-Webster*, https://perma.cc/RHS8-R56V— that Giles did not use his taser a second time. Further factual development should be permitted on Brown's claim based on this allegation, too.

\* \* \*

For the reasons stated, I dissent.