RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DESHAWN ANDERSON-SANTOS,

*Plaintiff-Appellee*,

*v.*

KENT COUNTY, MICHIGAN,

*Defendant*,

DEREK LESHAN, in his individual and official capacity,

*Defendant-Appellant*.

No. 23-1259

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-00453—Jane M. Beckering, District Judge.

Decided and Filed: February 29, 2024

Before: BATCHELDER, CLAY, and DAVIS, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Randall J. Groendyk, VARNUM LLP, Grand Rapids, Michigan, for Appellant. Jonathan A. Abent, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellee.

───────────────

**OPINION**

───────────────

CLAY, Circuit Judge. Plaintiff DeShawn Anderson-Santos, a juvenile detainee at the Kent County Juvenile Detention Center, suffered a head injury after being pushed by Defendant

Derek Leshan, a corrections officer. Anderson-Santos subsequently brought claims under 42 U.S.C. § 1983, the Fourteenth Amendment, and the Eighth Amendment, against Defendant Leshan. The district court denied Leshan's summary judgment motion, finding that there was a genuine dispute of material fact as to whether Leshan engaged in excessive force in violation of the Eighth Amendment. Therefore, the district court held that Leshan was not entitled to qualified immunity at the summary judgment stage. This interlocutory appeal followed. For the reasons set forth below, we **DISMISS** this appeal for lack of jurisdiction.

## I. BACKGROUND

### A. Factual Background

On January 14, 2020, DeShawn Anderson-Santos[1] was detained at the Kent County Juvenile Detention Center following his guilty plea for a crime unrelated to the instant case. At around 2:30 p.m., the detention center was undergoing a shift change. Detainees are supposed to be in their rooms during shift changes. According to Anderson-Santos' deposition, he was in his room when corrections officer Derek Leshan opened his door and pushed Anderson-Santos "hard," causing him to fall. R. 62-4, Page ID #270. Anderson-Santos hit his head on the cement base of his bed, and his head bled from a laceration. He also experienced pain and dizziness immediately after hitting his head. He received medical treatment, and complains of migraines, vision problems, and other symptoms to this day.

Leshan tells a different story. At first, Leshan told the treating nurse that Anderson-Santos stumbled and fell in his room of his own accord. But Leshan later testified that the contact arose when Leshan was attempting to get Anderson-Santos to go to his room. Leshan claimed that the environment "was a very light mood, it was kind of joking." R. 62-5, Page ID #291. According to him, the two were "chest to chest," with Leshan's hand on Anderson-Santos' shoulder. *Id.* Leshan stated that he was walking Anderson-Santos backwards when Leshan slipped on the "very slick" floor. *Id.* Then, Anderson-Santos' head accidentally hit the corner of the brick that forms the bottom of the detainees' beds. Leshan testified that he had no reason to have used physical force against Anderson-Santos.

---

[1]Various record documents refer to Anderson-Santos as just "Anderson," but because his own briefing uses "Anderson-Santos," so does this opinion.

A third version of these events comes from documents surrounding the investigation of the incident as well as depositions of relevant parties. A grievance form filled out by Anderson-Santos on the day of the incident reads:

> I was on my way to my room and as I was walking into my room, the staff which is Derrick [Leshan] followed me and he tried to pass off a joke and pushed me hard and I fell and hit my head on the corner on the brick and this happened around 2:25 right around shift change and it also led up to me bleeding.

R. 62-1, Page ID #259 (spelling corrected). The program director responded on the grievance form:

> Resident was seen by medical staff as a result following the incident to be treated due to having a laceration (injury) to his head . . . it was confirmed that the resident experienced an injury as a result of poor staff judgment. Staff was spoken to and reprimanded, suspended for 10 days and will not be allowed to work on the same unit as resident upon his return.

*Id.* Jeff Love, a supervisor at the detention center, testified in his deposition that "[Leshan] said that he pushed [Anderson-Santos] backwards and he slipped and fell." R. 62-6, Page ID #310. And Holly Austin, who investigated the incident on behalf of the Michigan Division of Child Welfare Licensing, testified in her deposition that Anderson-Santos said Leshan "was trying to play a joke on him by telling him that Mr. Anderson's sweater was ripped at the back of the shoulder and that when Mr. Anderson looked for the rip, Mr. Leshan pushed him on his chest with one hand." R. 62-9, Page ID #354–55.

### B. Procedural History

On June 2, 2021, Anderson-Santos brought suit against Defendants Kent County and Leshan. Anderson-Santos alleged that Leshan used excessive force against him in violation of the Fourteenth and Eighth Amendments. Additionally, he raised a § 1983 failure to train and/or supervise claim against Kent County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Both Defendants moved for summary judgment, which Anderson-Santos opposed.

The magistrate judge issued a Report and Recommendation ("R&R") which the district court later adopted in full. The R&R described the various contradictory versions of the

incident.  The magistrate judge concluded that a video of the events leading up to the incident[2] corroborated Anderson-Santos', but not Leshan's, earlier account of the fall during the investigation:  "Leshan asked Anderson about his sweater being ripped and pushed Anderson when he looked down, causing him to slip and fall backward."  R. 83, Page ID #866.

In light of the disputed summary judgment facts, the magistrate judge recommended denying Defendants' summary judgment motion as it applied to Leshan, finding that a genuine dispute of material fact existed as to the level of force Leshan used when pushing Anderson as well as his state of mind while doing so.[3]  In particular, the magistrate judge concluded that "a question of fact remains as to the amount of force that Leshan used.  Defendants characterize the push as *de minimis*, while Anderson claims that he 'was pushed hard.'"  *Id.* at Page ID #868 (quoting R. 62-4, Page ID #271).  Further, the magistrate judge found that "there is sufficient circumstantial evidence from which a jury could infer that the incident was not a joke."  *Id.* at Page ID #870.  The magistrate judge noted that because of these disputes of material fact—which bore directly on the question of whether Anderson-Santos' constitutional rights were violated—Leshan was not entitled to qualified immunity.

The district court then adopted the R&R in full, over Leshan's objections.  Because Leshan had not persuasively challenged the magistrate judge's conclusions that there were genuine issues of material fact, and because the magistrate judge's recommendation of a denial of qualified immunity was based on those genuine factual disputes, the district court held that there was "no error" in the R&R's qualified immunity determination.  R. 87, Page ID #994.  Leshan timely appealed.

---

[2]The video incompletely captures the events leading up to the incident, but not Anderson-Santos' fall itself, and therefore did not resolve the underlying factual dispute.

[3]The R&R recommended dismissing Anderson-Santos' claims against Kent County because Anderson-Santos failed to establish a *Monell* failure to train claim.  The district court adopted this recommendation and accordingly granted summary judgment to Kent County.  Because this partial grant of summary judgment was not a final order, Anderson-Santos cannot yet appeal the dismissal of this claim, and we do not discuss it further here.  *See Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009).

## II.  DISCUSSION

Our threshold—and, as it turns out, only—question is whether this case falls within our limited jurisdiction.  Leshan asks us to review the district court's denial of his motion for summary judgment, which included his claim of qualified immunity.  Typically, denials of summary judgment are not appealable to this Court on an interlocutory basis because they are not final orders over which we have jurisdiction.  *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008) (citing 28 U.S.C. § 1291).  But the Supreme Court has recognized that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  Nonetheless, because Leshan's appeal ultimately turns on questions of fact rather than an issue of law, we do not have jurisdiction to hear this appeal.

A defendant seeking to invoke a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."  *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).  In this case, the district court found there were genuine disputes of material fact regarding (1) whether Leshan used enough force to satisfy the objective prong of the excessive force inquiry, and (2) whether Leshan was "joking" such that he did not meet the subjective prong of the excessive force inquiry.  This disposition normally divests this Court of jurisdiction. *See Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006) ("[A] district court's determination that there exists a triable issue of fact *cannot* be appealed on an interlocutory basis, even when that finding arises in the context of an assertion of qualified immunity." (emphasis in original)).

However, a defendant seeking to challenge a denial of qualified immunity, even a denial based on a genuine dispute of material fact, may invoke our jurisdiction by conceding the plaintiff's version of the facts.  *See Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998) ("[I]n order for []an interlocutory appeal based on qualified immunity to lie, the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case.");  *see also Moldowan v. City of Warren*, 578 F.3d 351,

369–70 (6th Cir. 2009). A defendant who adopts the plaintiff's view can proceed before us by arguing that, even assessing the facts in the light most favorable to the plaintiff, there was no violation of the plaintiff's clearly-established rights. *Berryman*, 150 F.3d at 563.

Leshan attempts to overcome the factual dispute in this case by, as contemplated by *Berryman* and its progeny, conceding Anderson-Santos' interpretation of the facts and challenging only the district court's legal conclusion that his actions, viewed in the light most favorable to Anderson-Santos, violated Anderson-Santos' clearly-established constitutional rights. But, as we describe below, Leshan only purports to adopt Anderson-Santos' version of the facts. Because a concession in name only is no concession at all, we hold that such concessions are insufficient to invoke our jurisdiction. *Cf. Booher v. N. Ky. Univ. Bd. of Regents*, 163 F.3d 395, 397 (6th Cir. 1998) (requiring an "unqualified concession" from defendants seeking to invoke this Court's jurisdiction on a qualified immunity appeal).

Leshan's professed concessions are as follows: (1) he states that he is "willing to accept the plaintiff's story," and (2) he claims to "accept[] as true Anderson's version of the facts." Def. Br., ECF No. 9, 12, 14. But Leshan recites a version of the facts that Anderson-Santos does not accept: "Leshan walked into [Anderson-Santos'] room, jokingly told him to look down at his sweater, and then pushed him 'hard' with one hand to the chest." *Id.* at 14. And Leshan's arguments rely on disputed facts. Leshan continually refers to his physical contact of Anderson-Santos as a "joking" push—exactly what Anderson-Santos denies. *Compare* Def Br., ECF No. 9, 39 ("Leshan's conduct of pushing Anderson a single time in a joking manner demonstrates, at most, mere negligence.") *with* Pl. Br., ECF No. 13, 55 ("Mr. Anderson-Santos has and does allege that Defendant Leshan's actions were intentional and intended to cause harm, not merely 'joking.'"). Leshan also characterizes the push as "light" and compares his actions to other uses of "de minimis" force. *Id.* at 2, 12, 16. But Anderson-Santos alleges repeatedly that the push was "hard." Pl. Br., ECF No. 13, 7, 10, 47.

These are the exact disputes of material fact—the amount of force Leshan used when he pushed Anderson-Santos and his state of mind in doing so—that the district court relied upon in denying the motion for summary judgment. Leshan, in continuing to argue that there was no

clearly-established constitutional violation based on his version of the facts, fails to present us with a legal issue and relegates his claim to a factual dispute over which we cannot exercise jurisdiction. *Berryman*, 150 F.3d at 563. ("A defendant who is denied qualified immunity may file an interlocutory appeal with this Court *only* if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." (emphasis added)).

We have previously denied jurisdiction where, as in this case, the defendant purports to concede the plaintiff's view of the facts but in effect still litigates the factual dispute. Just like the defendants in *Booher*, Leshan states that he is "willing to concede any disputed facts for the purposes of appeal, but [he] preface[s] that concession with a narrative challenging several of the factual determinations underlying the district court's denial of qualified immunity." 163 F.3d at 396. Just like the defendant in *Barry v. O'Grady*, Leshan "applie[s] his own factual conclusions and inferences" to the plaintiff's claims. 895 F.3d 440, 444 (6th Cir. 2018). And just like the defendants in *Berryman*, Leshan "attempts to persuade us to believe [his] version of the facts." 150 F.3d at 565. In all three cases, we held that we had no jurisdiction. Because we cannot depart from our well-established precedent, we must similarly decline to find jurisdiction in this case. Where the defendant fails to truly concede the plaintiff's facts as required by our case law, we cannot exercise jurisdiction over the qualified immunity interlocutory appeal.

## CONCLUSION

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction.