RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DOMINIQUE RAMSEY; TRAVIS SAMMONS,

         *Plaintiffs-Appellees*,

    *v.*

DAVID RIVARD,

         *Defendant-Appellant*.

No. 23-1941

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:20-cv-13124—David M. Lawson, District Judge.

Decided and Filed:  August 1, 2024

Before: MOORE, COLE, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant.  Wolfgang Mueller, WOLF MUELLER LAW, Novi, Michigan, for Appellees.

───────────────

## OPINION

───────────────

COLE, Circuit Judge.  Plaintiffs Dominique Ramsey and Travis Sammons were incarcerated for over five years for the murder of Humberto Casas.  After the Michigan appellate courts determined that their convictions were based on an improper identification, the prosecution dismissed the case and Ramsey and Sammons were released.

Ramsey and Sammons sued David Rivard, the Michigan State Police sergeant who oversaw the identification procedure, bringing federal claims under the Due Process Clause and

the Fourth Amendment via 42 U.S.C. § 1983 for malicious prosecution, fabrication of evidence, and unduly suggestive identification, as well as a claim for malicious prosecution under Michigan law.  The district court denied Rivard's motion for summary judgment, determining that he was not entitled to absolute or qualified immunity for the federal claims nor to governmental immunity for the state law claim.  Rivard brought this appeal.  We dismiss Rivard's appeal of the denial of qualified immunity as to the federal malicious prosecution claim and the fabrication of evidence claim for lack of appellate jurisdiction.  We affirm the district court's denial of summary judgment as to all remaining claims.

I.

In this interlocutory appeal, where our jurisdiction is narrow, we defer to the district court's factual determinations and inferences, which are taken in the light most favorable to the plaintiffs to the extent supported by the record.  *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020); *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 611 (6th Cir. 2015).  In doing so, "ideally we need look no further than the district court's opinion for the facts and inferences cited expressly therein."  *DiLuzio*, 796 F.3d at 611.  With the notable exception of the anonymous call described in the follow up police report, the facts below are taken from the district court's opinion.

Humberto Casas was killed in Saginaw, Michigan on June 21, 2015.  DyJuan Jones, then sixteen years old, witnessed the shooting from the backseat of his mother's car.  Rosie Watkins witnessed the shooting from her own car.

According to Jones, the assailants drove a light grey Jeep with a license plate that included the letters "CE" or "GE."  A follow up police report stated that an anonymous caller saw a grey Jeep leaving the scene with the license plate DFQ9953.  (Police Dept. Follow Up Report July 3, 2015, R. 63-4, PageID 1168.)  Surveillance video compiled from nine cameras near the scene showed a Jeep (or two or more similar Jeeps), but the video did not show the shooting or any license plate numbers.

Jones described the driver as a Black man with a long beard, wearing a white shirt and appearing to weigh about 320 pounds. Watkins thought the driver had an average build. Jones described the second assailant as a bald, Black man wearing black pants and a white t-shirt.

Jones saw the second assailant fire three shots at Casas, stop when his gun jammed, and then fire more shots moments later. Jones did not see the shooter enter the vehicle, but saw the Jeep speed away. Jones and his mother, a nurse, rendered aid to Casas at the scene. Nevertheless, Casas died from his injuries.

Saginaw police stopped Dominique Ramsey and Travis Sammons about 10 to 20 minutes after the shooting. Ramsey and Sammons were driving a silver Jeep with a license plate number DFQ9593. Ramsey was not bald and had short stubble. Ramsey was 5'5" tall, 158 pounds, and was wearing a white t-shirt and blue jeans. Sammons was 5'4" tall, 125 pounds, and was wearing a white tank top with black basketball shorts. Sammons also was not bald.

Ramsey and Sammons were taken to the police station. That evening, Jones and his mother went to the police station. David Rivard, a Michigan State Police sergeant, decided to organize a show-up identification of only Ramsey and Sammons rather than a corporeal line-up where Ramsey and Sammons would stand next to five other individuals. Rivard discussed his plan with the assigned prosecutor, who told him that the identification procedure could not be suggestive. Rivard placed Ramsey and Sammons in separate 10 by 10 feet interview rooms. Rivard had Jones and his mother each walk down the hallway and look into the rooms. It is undisputed that Jones's mother did not identify either plaintiff.

Jones has maintained that he could not and did not identify Ramsey or Sammons. Rivard, however, prepared an investigation report that claimed Jones did identify Sammons as the shooter, but did not identify Ramsey. Rivard did not otherwise record or document Jones's purported identification of Sammons. No one witnessed the conversation between Jones and Rivard. Despite the purported identification, Ramsey and Sammons were released after the show-up.

Later, Ramsey and Sammons were charged with open murder, conspiracy to commit murder, possessing a firearm after a felony conviction, and carrying a firearm during a felony.

At the preliminary hearing and at trial, Jones denied identifying Sammons, although he did testify about his recollection of the shooting and described the assailants. Rivard testified that Jones identified Sammons. Additionally, the prosecution used Rivard's report to rebut and impeach Jones's testimony.

Sammons moved to suppress the identification. The trial court allowed the identification, finding it to be unnecessarily suggestive but still reliable. The jury found Ramsey and Sammons guilty of conspiracy to commit murder, but not guilty of open murder and the firearms charges. The trial court sentenced Sammons to life in prison.

The trial court granted Ramsey's motion for a directed verdict, concluding that the jury's verdict was against the great weight of the evidence, but the state successfully appealed. Sammons appealed his conviction and sentence. Sammons's appeal reached the Michigan Supreme Court, which vacated his conviction and remanded the case for a new trial, finding the show-up identification to be unduly suggestive and unreliable. The appellate court eventually remanded Ramsey's case for a new trial based on the same error. Ramsey and Sammons remained incarcerated throughout the course of their appeals.

In the trial court, the prosecutor filed a motion for nolle prosequi based on insufficient evidence to secure a conviction. Ramsey and Sammons were released on October 30, 2020 after more than five years and four months in custody.

Ramsey and Sammons sued Rivard, his supervisor, the prosecutor, and Saginaw County. The parties filed cross-motions for summary judgment. The district court denied summary judgment to Rivard as to the plaintiffs' federal claims for: (1) malicious prosecution under federal law, (2) fabrication of evidence, and (3) unduly suggestive identification, and their state law claim for (4) malicious prosecution. Rivard brought this appeal, challenging the district court's denial of absolute and qualified immunity for the federal claims and of governmental immunity for the state law claim.

II.

We have jurisdiction over an appeal from a denial of a motion for summary judgment based on absolute or qualified immunity "to the extent that it turns on an issue of law." *Watkins v. Healy*, 986 F.3d 648, 658 (6th Cir. 2021) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525–30 (1985)). Summary judgment is proper if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court should deny summary judgment if there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We review de novo the denial of absolute or qualified immunity at summary judgment, using the same standard as the district court. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). Under our limited jurisdiction here, however, we may consider Rivard's absolute and qualified immunity appeals only "to the extent they raise pure questions of law." *Id.* at 373. Michigan law governs our appellate jurisdiction over Rivard's challenge to the denial of governmental immunity as to the Michigan malicious prosecution claim. *Younes v. Pellerito*, 739 F.3d 885, 890 (6th Cir. 2014).

A.

Absolute testimonial immunity bars claims based on the defendant's testimony in a judicial proceeding. *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002). We have "consistently held that nontestimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony." *Gregory v. City of Louisville*, 444 F.3d 725, 738–39 (6th Cir. 2006). Rivard bears the burden of showing that absolute immunity applies to the allegations relating to the show-up identification and his allegedly fabricated report. *Moldowan*, 578 F.3d at 376 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).

Ramsey and Sammons argue that Rivard waived the absolute immunity issue because he only made "perfunctory mention of it in his primary brief [before the district court]." (Appellee Br. 30 (citing *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013)).) *Kuhn* applies to

the party's opening brief on appeal, not the briefing below. 709 F.3d at 624. We will consider an issue on appeal "as long as [it] was raised before the district court." *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022). Here, Rivard put the absolute immunity issue before the district court and the district court ruled against him. Accordingly, Rivard has not waived his absolute immunity arguments.

The district court denied absolute immunity because the plaintiffs' claims are based on pretrial, non-testimonial conduct. Rivard argues that he is entitled to absolute immunity because his testimony, not his pretrial conduct, is "the source of Plaintiffs' alleged harm." (Appellant Br. 42.) This is an argument about causation, not immunity. Ramsey and Sammons claim that Rivard's pretrial actions, such as fabricating the report about Jones's identification, led to their incarceration. His subsequent testimony cannot "insulate" this conduct. *Gregory*, 444 F.3d at 738; *Hinchman*, 312 F.3d at 205. Whether Rivard's pretrial conduct is the source of the plaintiffs' injuries "may be relevant to the question whether a complaint has adequately alleged a cause of action for damages." *See Buckley*, 509 U.S. at 272. "It is irrelevant, however, to the question whether the conduct of [Rivard] is protected by absolute immunity." *See id*. Only the immunity issue is before us on appeal. *See id*. Accordingly, Rivard is not entitled to absolute immunity for his pretrial conduct. *Gregory*, 444 F.3d at 742 (holding that "absolute immunity for testimony at trial does not 'relate back' to shield pretrial, nontestimonial acts such as fabrication of evidence.")

B.

To overcome a qualified immunity defense, the plaintiff must show (1) that the defendant violated his federal rights and (2) that the "contours of the right" were sufficiently clear that "a reasonable officer in the defendant's position should have known his conduct violated that right." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Summary judgment must be denied if "there is a factual dispute on which the question of immunity turns." *Id*.

We have jurisdiction over an interlocutory appeal from the denial of qualified immunity at summary judgment "to the extent that the defendant 'limit[s] his argument to questions of law premised on facts taken in the light most favorable to the plaintiff.'" *Adams*, 946 F.3d at 948

(quoting *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008)).  "The onus is on the defendant to comply with this jurisdictional limit[.]"  *Gillispie v. Miami Township*, 18 F.4th 909, 915 (6th Cir. 2021).

We may consider an interlocutory appeal of qualified immunity that contains some dispute of fact in "two narrow circumstances."  *Adams*, 946 F.3d at 948.  First, where the defendant is "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal."  *Id.* (quoting *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018)).  Second, in "exceptional circumstances," the defendant may challenge a district court's factual determination if it is "blatantly contradicted by the record, so that no reasonable jury could believe it."  *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

If the defendant fails to concede plaintiffs' version of the facts, "[w]e may still review 'pure questions of law.'"  *Id.* (quoting *Livermore ex el. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).  Where the disputed factual issues are "crucial" to the appeal, "we may not simply ignore" the dispute, and we must dismiss for lack of jurisdiction.  *Id.* at 951.

Here, Rivard does not make a sufficient concession.  In his reply, Rivard asserts that his "arguments on appeal have accepted the undisputed facts."  (Reply Br. 4.)  To invoke appellate jurisdiction, Rivard is required not only to accept the undisputed facts, but to "conced[e] the plaintiff[s'] version of the facts."  *Anderson-Santos v. Kent County*, 94 F.4th 550, 554 (6th Cir. 2024).  Throughout his briefing, Rivard insists that Jones did identify Sammons and later recanted.  The plaintiffs assert that Rivard lied about the identification and fabricated his report.  As Rivard does not concede the plaintiffs' version of the facts, we have jurisdiction only to the extent that Rivard's factual disputes are not "crucial" or that the district court's factual determinations are "blatantly contradicted by the record."  *Adams*, 946 F.3d at 948, 951.

1.

For their Fourth Amendment malicious prosecution claim, Ramsey and Sammons must show that (1) Rivard "made, influenced, or participated in the decision to prosecute," (2) there was "a lack of probable cause for the criminal prosecution," (3) Ramsey and Sammons suffered a resulting "deprivation of liberty," and (4) that the criminal proceeding was "resolved in [their]

favor."  *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (cleaned up).  Rivard challenges the first two elements.  Before reaching the merits, we must determine whether we have jurisdiction as to the denial of qualified immunity for this claim.

Rivard's arguments rely upon "crucial" disputes of fact.  Rivard argues that the decision to prosecute was "made independent of [him]" and "in full awareness of the credibility dispute between [him] and Jones."  (Appellant Br. 56.)  Ramsey and Sammons claim Rivard lied when he said Jones made the identification—under the plaintiffs' version of the facts, there is no question as to whether Rivard or Jones is credible.  Rivard's argument as to this element depends on his version of the facts.

Rivard does argue that "probable cause was established even without the Jones identification," which suggests that his insistence that he merely failed to document the identification might not be crucial to his probable cause argument, which would allow us to maintain appellate jurisdiction.  (Appellant Br. 57.)  This argument must fail, however.

Rivard "relies solely on his version of the facts" to assert that there was probable cause. *See Gillispie*, 18 F.4th at 917 (quoting *Adams*, 946 F.3d at 950–51).  Rivard bases his probable cause argument on inculpatory facts in the record such as the anonymous call describing a grey Jeep with a nearly matching license plate number and eyewitness, video, and cell phone evidence that place a grey or silver Jeep at the scene and the plaintiffs' Jeep in the area.  In doing so, Rivard ignores parallel exculpatory facts: neither the eyewitnesses' descriptions of the assailants nor Jones's description of the license plate matched the plaintiffs or their Jeep.  Rivard dismisses the "[d]iscrepancies in eyewitness testimony about the appearances of the suspects" as "to be expected."  (Appellant Br. 56.)  This fails to view the facts or take inferences in the plaintiffs' favor as to whether probable cause existed.  *See Gardenhire*, 205 F.3d at 318 (holding that a probable cause determination depends on "the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence").

Moreover, Jones's *inability* to identify Sammons or Ramsey matters for the probable cause analysis.  *See id*.  Jones saw the crime occur and was able to give at least partial physical descriptions of the driver and the shooter.  Taking inferences in the plaintiffs' favor, that Jones

did not recognize either Sammons or Ramsey suggests that they were not the men Jones saw commit the crime. *See Adams*, 946 F.3d at 948. Rivard also omits this exculpatory evidence from his probable cause analysis.

As Rivard's arguments depend on his version of the facts, the factual dispute is "crucial," so we cannot ignore it. *Adams*, 946 F.3d at 951. Therefore, we can have appellate jurisdiction only if the district court's factual determinations are "blatantly contradicted by the record." *Scott*, 550 U.S. at 380. This is a narrow exception. *Romo v. Largen*, 723 F.3d 670, 675 (6th Cir. 2013) (holding that this path to appellate jurisdiction is "limited as an exception for blatantly contradicted facts"). We do not automatically have jurisdiction where the district court "has not expressly cited the facts or evidence it relied on." *See Browning v. Edmonson County*, 18 F.4th 516, 523 (6th Cir. 2021) (citing *DiLuzio*, 796 F.3d at 610–11). If the district court's determinations are "unclear," we review the record to "'determine what facts the district court . . . likely assumed.'" *Romo*, 723 F.3d at 675 (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)).

Here, Rivard correctly identifies that the district court's opinion does not mention that an anonymous caller reported a grey Jeep leaving the scene and gave a license plate number that nearly matched the plaintiffs' plate number. (Reply Br. 4.) For his part, Rivard omits that Jones gave a partial license plate number that, if accurate, could not match the plaintiffs' Jeep. This creates a credibility contest between Jones and the anonymous caller. Rivard does not point to evidence that shows the anonymous call's "indicia of reliability" or the caller's veracity or basis of knowledge. *See Illinois v. Gates*, 462 U.S. 213, 233 (1983). On this record, taking all facts in favor of the plaintiffs, the district court likely assumed that Jones's description of the license plate negated the anonymous call in the probable cause analysis. *See Browning*, 18 F.4th at 524.

Because Rivard's arguments rely on his version of the facts, and because the district court's determinations are not blatantly contradicted by the record, we lack jurisdiction to resolve his appeal as to the denial of qualified immunity for the federal malicious prosecution claim.

2.

We also lack appellate jurisdiction as to Rivard's qualified immunity defense to the fabrication of evidence claim because Rivard "fails to limit his arguments to questions of law taking the facts in the light most favorable to Plaintiffs." *Adams*, 946 F.3d at 949.

In the absolute immunity section of his brief, Rivard does "assume[] here for purposes of argument" that "evidence was fabricated." (Appellant Br. 42.) Yet as to qualified immunity, Rivard characterizes his actions as a "mere failure to document a witness identification" and argues that he "was not on notice that failing to document an identification would violate anyone's rights if that witness unexpectedly recanted in the future." (Appellant Br. 46.) Ramsey and Sammons assert that Rivard invented the witness identification, not that he failed to document it. "Because a concession in name only is no concession at all," Rivard cannot invoke appellate jurisdiction as to this claim because his arguments depend on a version of the facts the plaintiffs "do[] not accept." *Anderson-Santos*, 94 F.4th at 554.

3.

Rivard argues that qualified immunity bars the plaintiffs' unduly suggestive identification claim because they cannot show that Rivard's actions violated their clearly established rights. (Appellant Br. 49.) We have appellate jurisdiction over Rivard's appeal of denial of qualified immunity as to the unduly suggestive identification claim because his arguments do not turn on factual disputes.

Under *Gregory*, "suspects have a constitutional right to be free from identification procedures 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that the identification's use violates due process of law." 444 F.3d at 746 (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). The right is clearly established where a reasonable officer would reach the conclusion that the show-up is impermissible under the totality of the circumstances based on the *Biggers* factors. *Id*. at 745–46 (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). An unnecessarily suggestive identification violates due process when it creates a substantial likelihood of misidentification. *Biggers*, 409 U.S. at 198–99. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the

witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199–200.

In his brief, Rivard waives his argument that a reasonable officer may not have known the show-up was unconstitutional under the *Biggers* factors: "suggestiveness, necessity, and reliability are also beside the point . . . there is no need here to litigate matters such as opportunity to view, degree of attention, accuracy of the description, level of certainty, and time between crime and confrontation." (Appellant Br. 49.)

Instead, Rivard argues that he was nevertheless not on adequate notice that the show-up would violate the plaintiffs' rights because he "specifically consult[ed] with a prosecutor," there was circumstantial evidence of the plaintiffs' guilt, Jones identified only one of the two plaintiffs, and Jones's mother did not identify either. (Appellant Br. 51–53.) Each of these arguments fails.

First, Rivard gains no immunity for violations of clearly established law by following the prosecutor's advice. *See Burns v. Reed*, 500 U.S. 478, 495 (1991). Second, there is no exception for suggestive identifications of suspects who seem guilty based on other circumstantial evidence. Rivard argues that "[s]eparate and apart from the showup, [he] and the other investigators would have had every reason to implicate Plaintiffs and refer to the prosecutor for a charging decision." (Appellant Br. 53.) The constitutional harm here is the use of the impermissible identification leading to a criminal conviction, not the referral to the prosecutor. *Gregory*, 444 F.3d at 746. Nor does the prosecutor's decision to move forward shield Rivard from liability. *Id.* at 747.

Finally, Rivard argues that the results of the show-up would not have indicated to him that it was suggestive. According to Rivard, the show-up cannot have been suggestive because Jones's mother did not identify either plaintiff and Jones did not identify Ramsey. That only one misidentification actually occurred is not dispositive as to whether the circumstances of the show-up created a substantial likelihood of misidentification.

Because a jury could find the show-up to be unduly suggestive and unnecessary and the resulting identification to be unreliable under clearly established law, the district court correctly found that Rivard is not entitled to immunity against this claim.

C.

Rivard appeals the district court's denial of governmental immunity as to the Michigan malicious prosecution claim. Under Michigan law, we have jurisdiction over an interlocutory appeal of denial of governmental immunity. *Younes*, 739 F.3d 885 at 890. We review the denial of governmental immunity at the summary judgment stage de novo, viewing the facts and drawing inferences in the light most favorable to the plaintiffs. *Id.* We apply Michigan governmental immunity law and federal procedural law. *Id.* (citing *Smith v. County of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010)). If there is a genuine dispute of material fact, summary judgment is precluded. *Id.*

To be entitled to governmental immunity, Rivard must establish that he (1) acted in the course of his employment and acted or reasonably believed that he was acting within the scope of his authority, (2) was performing a discretionary act, and (3) acted in good faith or without malice. *Odom v. Wayne County*, 760 N.W.2d 717, 728 (Mich. 2008).

Only the last element is at issue. (Reply Br. 10; Appellee Br. 50–53.) Rivard argues that there is "no question about" his good faith because he "played a limited role in the investigation and acted on the best information he had to advance it" with an "intent to solve a crime and pursue the correct suspects." (Appellant Br. 59–60.) Rivard contends that the "[p]laintiffs' claim boils down to alleged negligence for failing to document Jones identifying Sammons." (Reply Br. 11.) These arguments do not accept the facts in the light most favorable to the plaintiffs. Under the plaintiffs' version of events, Rivard lied about the identification in order to link the plaintiffs to a murder that they had no part in. A jury can infer lack of good faith from a police officer's lie that formed the basis for an arrest. *King v. City of Rockford*, 97 F.4th 379, 402 (6th Cir. 2024).

Rivard also argues that his transparency about the "credibility contest" with Jones means there can be no genuine question of material fact regarding his good faith. (Reply Br. 12.) But,

as discussed above, viewing the facts in the plaintiffs' favor, Rivard's lie created the contest with Jones.  Transparency under those facts requires admitting to the lie itself, not merely disclosing that Jones would give conflicting testimony.

Because there is a genuine dispute of material fact as to Rivard's good faith, the district court correctly denied summary judgment based on governmental immunity.

III.

For the foregoing reasons, we dismiss Rivard's appeal of the denial of qualified immunity as to the federal malicious prosecution claim and the fabrication of evidence claim for lack of appellate jurisdiction.  We affirm the district court's denial of summary judgment as to all remaining claims.