NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0214n.06

Case No. 24-1830

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Apr 22, 2025

KELLY L. STEPHENS, Clerk

RAMON WARD,

      Plaintiff-Appellee,

v.

WAYNE COUNTY, MICHIGAN, et al.,

      Defendants,

MONICA CHILDS; DALE COLLINS,

      Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

O P I N I O N

Before: COLE, McKEAGUE, and RITZ, Circuit Judges.

COLE, Circuit Judge. Ramon Ward was convicted of murder and served over twenty years in prison. After discovering new evidence exonerating Ward, the state court, at the stipulation of Ward and the prosecutor, vacated Ward's conviction. Ward sued Wayne County, Michigan, the Detroit Police Department, and several individuals in each office pursuant to 42 U.S.C. § 1983, alleging federal and state constitutional claims arising from his incarceration. The district court denied two officers' motion for summary judgment based on qualified immunity. We affirm.

## I.

When reviewing an interlocutory appeal of denial of qualified immunity, we "ideally . . . look no further than the district court's opinion for the pertinent facts and inferences." *Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018). Accordingly, we recite the facts from the district court's opinion.

A.

This case arises from Ramon Ward's conviction for murder and its subsequent vacatur.  In 1994, two people were found murdered.  The Detroit Police Department (DPD) began investigating the murders.  Detective Dale Collins was selected as the lead investigator, and Officer Monica Childs assisted him.  Together, Collins and Childs worked the case.

Their investigation accelerated when Childs took a statement from Ward's cousin, Jimmie Lee Stancil.  Stancil stated that Ward threatened to kill one of the victims because she owed him money.  After hearing that the two victims had been killed, Stancil asked Ward if he was responsible.  Ward allegedly answered, "yeah, I took care of that."  (Op. and Order, R. 163, PageID 7251 (quoting Stancil Statement I, R. 123-4, PageID 4189).)   Based on Stancil's statement regarding Ward's admission, Childs ordered officers to arrest Ward.

After being arrested and advised of his *Miranda* rights, Ward gave an exonerating statement to officers.  Ward described seeing the victims being forced out of a car and into a house by a group of men, and stated that the men shot the victims.  Ward was held at DPD headquarters at the "Ninth Floor Lockup."  (*Id.* (citing Childs Dep., R. 123-8, PageID 4329).)

Childs claims that, while Ward was in custody, she again advised him of his *Miranda* rights and interviewed him.  Childs alleges that, during the interview, Ward confessed to the murders.  Childs prepared a statement reflecting the interview, but Ward refused to sign it.

A few days later, Stancil gave another statement to Childs.  He told Childs that Ward planned to steal the other victim's Social Security check to fund his drug-dealing business.  Once again, Stancil said that Ward admitted to killing both victims.

Afterwards, two inmate informants housed in the Ninth Floor Lockup—Joe Twilley and Oliver Cowan—gave written statements to DPD. They stated that Ward confessed to the murders. Ward claims that Twilley's and Oliver's statements (and later testimony) were fabricated.

Ward had a preliminary hearing on May 5, 1994, where Twilley, Cowan, and Stancil testified. Months later, Twilley, Stancil, and Childs testified at Ward's trial, while Cowan's preliminary testimony was read into the record because he died prior to trial. The jury convicted Ward on all counts, and he was sentenced to life in prison without parole.

Though Ward's trial had ended, the prosecutor's office had existing concerns about DPD's reliance on fabricated confessions. The prosecutor primarily referenced his concerns about Twilley and Cowan, who testified in a recent case in exchange for more lenient sentences. That case may have been Ward's.

This was a familiar issue to DPD. Informants in DPD custody would try to entice other inmates to confess to crimes and report those confessions to the DPD in exchange for lenient sentences, food, alcohol, and conjugal visits. Collins, for example, testified in favor of reducing Twilley's sentence in exchange for his informant testimony. Where informants could not close the gap in facts regarding a murder, "detectives would make up the rest of the story."

The Ninth Floor Lockup informants were not the only unreliable witnesses. Stancil, for his part, was a suspect in the murder investigation. He also recanted his original story incriminating Ward, later testifying that he never spoke with Ward about the murders. Stancil claimed to have been confused when he originally made the statement to Childs, as Stancil was told he was a suspect for the murders.

The skepticism of the prosecutor's office proved justified when, several decades later in 2018, the Wayne County Prosecutor's Office Conviction Integrity Unit unearthed new evidence

pertaining to Ward's case. Pernell Bradford—who was twelve years old at the time of the murders—submitted an affidavit that he witnessed another man shoot the victims, not Ward. Bradford testified that his father and Ward instructed him to remain silent for fear of retribution from the real shooters. Bradford did as he was told, until he spoke with an attorney investigating Ward's case.

In light of this evidence, the state trial court entered a stipulated order, submitted by the prosecutors and Ward, vacating Ward's conviction and sentence.

B.

Following his release, Ward brought a series of constitutional claims for violation of his rights due to his prior incarceration. Pursuant to 42 U.S.C. § 1983, Ward sued several defendants from Wayne County, members of DPD, as well as the county and police department themselves.

After each group of defendants filed motions for summary judgment, and the magistrate judge issued reports and recommendations, the district court dismissed claims against all but two defendants: Childs and Collins (defendants).

On these facts, the magistrate judge concluded—and the district court agreed—that "a jury could reasonably find that Childs and Collins knowingly manufactured Twilley's and Cowan's testimony against Ward in exchange for leniency on their sentences." (R&R, R. 151, PageID 6938; Op. and Order, R. 163, PageID 7280–82.) And, finding that Stancil's testimony alone could not establish probable cause, the district court concluded that this dispute about record evidence presented a classic factual question for the jury to decide, precluding qualified immunity.

The district court denied defendants summary judgment on Ward's § 1983 claims for unlawful detention, fabrication and suppression of evidence, malicious prosecution, conspiracy, and failure to intervene. The district court also denied defendants summary judgment on Ward's

state law claims for false arrest, malicious prosecution, abuse of process, and intentional infliction of emotional distress. Having survived summary judgment, these counts were fit for trial.

Defendants timely appealed the district court's opinion and order denying their motion for summary judgment on the basis of qualified immunity.

II.

We normally review only final orders from the district court. 28 U.S.C. § 1291. If, however, the district court denies qualified immunity, we are empowered to review the district court's order pursuant to the collateral-order doctrine. *DeCrane v. Eckart*, 12 F.4th 586, 601 (6th Cir. 2021). This allows us to review only "purely legal issues[.]" *Cockrun v. Berrien County*, 101 F.4th 416, 419 (6th Cir. 2024). Thus, where a defendant "quarrel[s] with the plaintiff's record-supported facts," and "the officer's dispute of facts is crucial to the appeal[,]" we lack jurisdiction. *Heeter v. Bowers*, 99 F.4th 900, 908–09 (6th Cir. 2024) (internal quotation marks and citation omitted).

We exercise de novo review over an appeal of the district court's denial of qualified immunity. *Gillman v. City of Troy*, 126 F.4th 1152, 1158 (6th Cir. 2025). If the evidence shows a genuine dispute of material fact, such that a reasonable jury could find in favor of the nonmoving party, the moving party is not entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(c)). The court cannot determine credibility or weigh evidence, as doing so would usurp the jury's role. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A public official is entitled to qualified immunity at summary judgment when, viewing the facts in the light most favorable to the plaintiff, the challenged conduct did not violate clearly established constitutional rights of which a reasonable person would have known." *Heeter*,

99 F.4th at 908 (quoting *Jackson v. City of Cleveland*, 64 F.4th 736, 745 (6th Cir. 2023)) (cleaned up).

### III.

Defendants appeal the district court's denial of qualified immunity. First, we consider defendants' arguments pertaining to the district court's subject matter jurisdiction. Second, we identify which of defendants' arguments were not preserved for appeal. Third, we consider defendants' preserved arguments to determine whether they are entitled to qualified immunity. Finally, we address defendants' state immunity arguments.

### A.

We first consider defendants' challenge to the district court's subject matter jurisdiction. To proceed in a § 1983 action for damages resulting from an unconstitutional conviction or imprisonment, a plaintiff must first demonstrate that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

Defendants argue that the trial court erred by "disregard[ing] Michigan law to hold [Ward's] conviction was properly overturned." (Appellant Br. at 21.) Although they framed their arguments as pertaining to subject matter jurisdiction before the district court, their brief on appeal does not identify whether this is a jurisdictional question or how the issue pertains to this limited appeal regarding qualified immunity.

As the district court noted, a party cannot "mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (cleaned

up)). Defendants cite no caselaw in support of their argument, merely relying on Michigan Court Rule 6.502. Their cursory attempt to invalidate Ward's vacatur is therefore waived. *See McPherson*, 125 F.3d at 995–96 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995))).

Moreover, defendants' proposed resolution would pose grave federalism concerns. Defendants' arguments invite this court to question the validity of a state trial judge's vacatur of Ward's conviction, which was jointly submitted by Ward and the Wayne County Prosecutor's Office. And defendants do not wrestle with the implications of their argument, such as whether an order from this court declaring the vacatur improper would result in reincarcerating Ward.

For these reasons, we reject defendants' arguments regarding Ward's state court vacatur.

B.

Many of defendants' arguments were not made at the critical juncture below: after the magistrate judge issued her report and recommendation.

When a magistrate judge conducts the first review of parties' motions, she issues a report and recommendation. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Parties then have fourteen days to file written objections to the magistrate judge's proposed findings. Fed. R. Civ. P. 72(b)(2). When establishing the objection deadline, magistrate judges will often advise the parties that failing to object will result in waiver. *See Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review[.]" (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987))). Upon receiving objections to the magistrate judge's report and

recommendation, district judges review the magistrate judge's disposition de novo. Fed. R. Civ. P. 72(b)(3).

A magistrate judge's notice regarding objections should not be taken lightly. Indeed, when a magistrate judge notifies parties that failure to raise a specific objection to her report and recommendation would result in waiver, parties must heed the magistrate judge's warning and timely submit their specific objections for the district judge's review. *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

Failure to do so results in waiver of any argument not contained in an objection, as neither the district judge reviewing the magistrate judge's report and recommendation nor the court of appeals reviewing the district judge's opinion and order may review undeveloped arguments from past stages of litigation. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) ("The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately. This comports with judicial efficiency[.]").

These rules limit the scope of our review. Here, the magistrate judge warned defendants that failure to file a specific objection to her report and recommendation would result in waiver on appeal. (R&R, R. 151, PageID 6955 (citing *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).) Defendants objected to the magistrate judge's report and recommendation regarding the length of their summary judgment motion, subject matter jurisdiction pertaining to Ward's vacated conviction, the accrual date for the statute of limitations applied to Ward's constitutional claims, the statute of limitations for Ward's state law claims, that Ward's detention and conviction were supported by probable cause, the magistrate judge's characterization of certain facts, the veracity of Ward's conspiracy claim, whether Childs and Collins acted in bad faith such that they are not

entitled to governmental immunity, and their entitlement to summary judgment on Ward's fabrication of evidence claim.

Though raising some objections pertaining to jurisdiction, Ward's federal claims, and Ward's state law claims, defendants did not object to all of the magistrate judge's specific findings. Many of defendants' arguments on appeal suffer from this fatal flaw. The magistrate judge considered and wholly denied defendants' motion for summary judgment pertaining to Childs and Collins. And defendants' objections made no mention of arguments regarding res judicata or collateral estoppel, probable cause stemming from Ward's criminal history, Ward's failure to present admissible evidence supporting his fabrication of evidence claim, defendants' influence or participation in the prosecution, the sufficiency of Ward's conspiracy allegations, and defendants' failure to intervene. And although Ward identifies each of defendants' arguments that may be waived for failing to object to the magistrate judge's report and recommendation, defendants do not contest their failures to object in their reply brief.

None of these arguments, now raised on appeal, were in defendants' specific objections to the magistrate judge's report and recommendation. As such, they are waived, and we will not consider them here.

C.

We now turn to whether defendants are entitled to qualified immunity. To overcome qualified immunity at the summary judgment stage, a plaintiff must demonstrate that a reasonable juror could conclude that the state officials (1) violated the plaintiff's constitutional rights and (2) those constitutional rights were clearly established at the time the violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Defendants argue only that no constitutional violation occurred. We limit our analysis accordingly, first addressing Ward's claims for unlawful detention and malicious prosecution, then addressing his claims for fabrication of evidence and conspiracy.

1.

To show a violation of his Fourth Amendment rights under theories of unlawful detention and malicious prosecution, Ward must show that the defendants acted without probable cause. *See Manuel v. City of Joliet*, 580 U.S. 357, 367, 369 n.8 (2017) (discussing probable cause in the unlawful detention context); *France v. Lucas*, 836 F.3d 612, 626 (6th Cir. 2016)). "[A]n allegation by one individual that another person committed a crime without further corroboration is insufficient to establish probable cause to arrest that person." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 282 (6th Cir. 2020). This is particularly true where the allegation was made by an unreliable source, such as someone who had a reason to lie. *Logsdon v. Hains*, 492 F.3d 334, 343 (6th Cir. 2007).

Though unlawful detention and malicious prosecution claims require other elements, defendants' arguments for reversal primarily rise or fall with our resolution of whether a reasonable juror could conclude that Ward's arrest and detention was supported by probable cause.

Prior to Ward's arrest in 1994, defendants had to establish probable cause. Childs ordered Ward's initial arrest based on Stancil's statement. And at his preliminary examination, the court chose to detain Ward for trial. Ward then moved to suppress his statements to Childs. The state trial court denied Ward's motion and found that probable cause existed. These state court rulings are the basis for defendants' probable cause arguments.

All decisions from the state trial court regarding probable cause, however, have no preclusive effect on the present case. *See Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019)

(concluding that because the criminal judgment had been vacated, "the trial court's interlocutory rulings . . . [had] merged with the final judgment, which means those interlocutory rulings [had] been vacated too"). Thus, to the extent defendants rely on since-vacated rulings from the state trial court, we reject their arguments.

The evidence presented to the district court reveals genuine disputes of material fact about whether probable cause existed for Ward's detention and prosecution. The state court relied on testimony from three informants—Twilley, Cowan, and Stancil—to conclude probable cause existed. The magistrate judge concluded that a reasonable juror could find that Twilley and Cowan testified falsely at Ward's preliminary investigation in exchange for lenient sentences, and defendants failed to object to this finding, leaving Stancil as the sole witness whose testimony could support a finding of probable cause as a matter of law. Stancil, however, was inconsistent in his testimony and had legitimate reasons to lie, as he was a suspect for the murders. On this basis, the district court concluded that Stancil alone could not support a finding of probable cause.

Viewing the evidence in the light most favorable to Ward, Stancil's testimony presents genuine disputes of material fact regarding whether defendants' actions were supported by probable cause. Therefore, triable issues remain regarding Ward's claims for unlawful detention and malicious prosecution.[1]

## 2.

For his fabrication of evidence claim to succeed, Ward must establish that (1) evidence was knowingly fabricated and (2) a reasonable likelihood exists that the false evidence affected the

---

[1] Defendants cursorily argue that, because they were not the prosecutors who tried the case against Ward, they cannot be held liable for malicious prosecution. That is not so. A police officer or detective can be held liable for malicious prosecution, so long as they influenced or participated in the decision to prosecute. *See, e.g.*, *Rieves v. Town of Smyrna*, 67 F.4th 856, 866 (6th Cir. 2023) (denying qualified immunity to county sheriff who helped direct an investigation). Here, Childs and Collins did just that.

jury's decision. *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015). Contrary to the parties' arguments, probable cause is not required for Ward's fabrication claim. *See Tanner v. Walters*, 98 F.4th 726, 733 (6th Cir. 2024) (citing *France*, 836 F.3d at 629).

The same facts that demonstrate a potential lack of probable cause, however, support Ward's claim that fabricated evidence affected the jury's decision. Twilley, with Collins's support, received a more lenient sentence for his testimony against Ward, but the attorney prosecuting Ward was not informed of their bargain. Cowan, for his part, received a lenient sentence after testifying against Ward in Ward's preliminary examination hearing. The magistrate judge and district court determined that a reasonable jury could conclude that defendants withheld this key impeachment evidence.

We agree. Viewing the evidence in the light most favorable to Ward, a reasonable jury could conclude that Childs and Collins knowingly fabricated and suppressed evidence that affected the trial court jury's decision. Ultimately, this case hinges on whom to believe. The questions presented here often pertain to credibility—issues ripe for jury consideration. *See Clark v. Abdallah*, 131 F.4th 432, 458 (6th Cir. 2025) ("[D]eterminations about the credibility of witnesses fall squarely within the province of the jury and outside the scope of [an] interlocutory appeal." (citing *Berryman v. Rieger*, 150 F.3d 561, 564 (6th Cir. 1998))).

Defendants also argue that Ward's conspiracy claims are time-barred. Because defendants' arguments pertaining to the statute of limitations "can be effectively reviewed after a final judgment . . . , we lack jurisdiction to review [them]" in this limited appeal of denial of qualified immunity. *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 475 (6th Cir. 2022) (citing *DeCrane*, 12 F.4th at 601–02).

Having determined that a genuine dispute of material fact exists regarding probable cause and whether fabricated evidence affected the outcome of Ward's trial, we conclude that a reasonable jury could find that Ward has suffered constitutional violations. Therefore, we conclude that the district court correctly determined that defendants were not entitled to qualified immunity as a matter of law.

D.

Finally, we must address defendants' appeal of the district court's denial of state law immunity. Like qualified immunity, we "review the denial of governmental immunity at the summary judgment stage de novo, viewing the facts and drawing inferences in the light most favorable to the plaintiff." *Gillman*, 126 F.4th at 1161 (quoting *Ramsey v. Rivard*, 110 F.4th 860, 870 (6th Cir. 2024)). In Michigan, governmental employees are immune from tort liability unless their conduct constitutes gross negligence and is the proximate cause of the plaintiff's injury. Mich. Comp. Laws § 691.1407(2)(c). Michigan defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(8)(a).

Though defendants cite this statute, they do not develop their argument. "[I]n instances where issues are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, we consider them forfeited." *Buetenmiller*, 53 F.4th at 946 (cleaned up) (quoting *McPherson*, 125 F.3d at 995–96) (cleaned up).

This case presents such an instance. Here, defendants merely assert that Ward's "state tort allegations fail to allege specific facts or provide admissible evidence" showing that defendants acted recklessly, with malice, or in bad faith. They make no effort to connect Ward's allegations to the relevant legal standard, compare the facts of this case to our precedent, or grapple with the

district court's conclusion that their argument was similarly perfunctory below Thus, their arguments are forfeited.

The remainder of defendants' arguments pertain to whether Ward's claims are time-barred. As with defendants' statute of limitations arguments regarding Ward's civil conspiracy claim, we lack jurisdiction over such issues at this juncture. *Campbell*, 47 F.4th at 475.

Accordingly, we reject defendants' arguments pertaining to Ward's state law claims.

IV.

For the foregoing reasons, we affirm the district court's opinion and order denying defendants' motion for summary judgment.